IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD PAUL SHOVER II,       :     CIVIL ACTION NO. **3:CV-11-2248**
                        :
        Plaintiff        :     (Judge Nealon)
                        :
         v.         :     (Magistrate Judge Blewitt)
                        :
YORK COUNTY,            :
et al.,                    :
                        :
        Defendants   :

## REPORT AND RECOMMENDATION

**I. Background.**

On December 5, 2011, Plaintiff Richard Paul Shover II,  an inmate at the York County Prison ("YCP"), York, Pennsylvania, filed the instant civil rights action, pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Plaintiff also filed two Motions for leave to proceed *in forma pauperis*. (Docs. 2 and 11).

Plaintiff's original Complaint consisted of six type pages and an Exhibit, namely, a copy of Plaintiff's August 26, 2011 Parole Violation Order imposed by the York County Court of Common Pleas, in *Com. of PA v. Richard Shover*, Docket No. CP-67-CR-3077-2008, sentencing Plaintiff  to serve the 260 days balance on his criminal sentence at the Dauphin County Work Release Center. (Doc. 1).

In his original Complaint, Plaintiff names the following three (3) Defendants: York County Prison; Mary E. Sabol, Warden at YCP; and Albert J. Sabol, Chief Probation and Parole Officer at the York County Probation and Parole Office.

On December 6, 2011, Plaintiff filed a 4-page typed Supplemental Complaint. (Doc. 6).  In his Supplemental Complaint, Plaintiff names the following six (6) Defendants: The County of York,

in its official capacity; Mary E. Sabol, Warden at YCP; Albert J. Sabol, Chief Probation and Parole

Officer at the York County Probation and Parole Office; Claire Dull, Deputy Warden at YCP; and

Jeffery Hall, Counselor for YCP.  Plaintiff states that he sues the four  individual Defendants in both

their individual and official capacities.

On December 9, 2011, Plaintiff submitted Exhibits, including another copy of the August

26, 2011 Parole Violation Order imposed by the York County Court of Common Pleas and a copy

of his Dauphin County Work Release Center Sentence and Employment Verification with respect

to his York County Court of Common Pleas criminal case, Docket No. CP-67-CR-3077-2008, and

his instant parole violation sentence dated August 26, 2011, indicating that Plaintiff was employed

by his brother at D&S Lawn and Landscape in York Haven, Pennsylvania.  (Doc. 8).

On December 5 and 12, 2011, Plaintiff filed two Motions for Appointment of Counsel.

(Docs. 3 and 10).  Also on December 12, 2011, Plaintiff filed a 2-page typed Memorandum of Law

with his 2-page typed Declaration attached.  (Doc. 9).

## II.  Allegations of Complaints.

Plaintiff essentially claims that he was improperly confined in York County Prison for his

August 26, 2011 parole violation sentence of 260 days when  the Court specifically ordered that

he was  to serve his sentence  in partial confinement at the Dauphin County Work Release Center.

Plaintiff also states that the August 26, 2011 Parole Violation Order directed that his

probation/parole would be terminated after he paid the costs/fines in full.   In both of his pleadings,

Plaintiff clearly indicates that he has not yet exhausted all of his administrative remedies available

at YCP regarding his grievance requesting to be transferred from YCP to the Dauphin County Work

Release Center pursuant to his August 26, 2011 Parole Violation Sentence. (Doc. 1, p. 2 and Doc, 6, p. 2 and Doc. 9). In his Supplemental Complaint, Plaintiff states that he "continues to exhaust his administrative] remedies at little or no availe (sic) due to interference by county officials at the prison." (Doc. 6, p. 2). Plaintiff states that he will continue to try and exhaust his administrative remedies as they are available to him. (*Id*.).

Plaintiff alleges that Defendants are preventing him from serving his August 26, 2011 Parole Violation Sentence in the Dauphin County Work Release Center  as ordered by the York County Court, and that this is preventing him from working and paying off his costs and fines which will complete his sentence and close his criminal case. Plaintiff avers in his Declaration (Doc. 9, Ex. 1) that he was previously sentenced on his second parole violation to the Dauphin County Work Release Center, that his employer is registered to participate in work release there, and that he lives and works near the Center.[1]

Plaintiff raises several constitutional claims, including violations of his Eighth Amendment rights against Defendants by illegally confining him in YCP when he was sentenced to the Dauphin County Work Release Center, First Amendment claim that officials at YCP mailroom are tampering with and reading his legal mail, First Amendment claim that he is being denied access to the courts by searching and reading his legal mail outside of his presence, §1983 conspiracy claim, and Fourteenth Amendment due process claims. Plaintiff also asserts civil RICO claims. Further, in his original Complaint, Plaintiff raises several state law claims such as false imprisonment and unlawful

---

[1]It appears that Plaintiff's August 26, 2011 parole violation at issue herein was his third violation.

restraint. (Doc. 1).

As relief in his original Complaint, Plaintiff requests this Court to declare that the acts of Defendants violated his constitutional rights. Plaintiff requests this Court to issue an injunction ordering Defendants to release him from custody at YCP, to close his York County Court of Common Pleas criminal case, *Com. of PA v. Richard Shover*, Docket No. CP-67-CR-3077-2008, and to terminate his probation and parole.[2] Plaintiff also seeks compensatory and punitive damages against Defendants. (Doc. 1, p. 5).[3]

In his Supplemental Complaint, Plaintiff requests that this Court issue an injunction directing Defendants to immediately transfer him from YCP to the Dauphin County Work Release Center as was ordered on August 26, 2011, by the York County Court of Common Pleas, in Docket No.

---

[2]To the extent Plaintiff seeks this Court to release him from custody at YCP and to the extent he is challenging Defendants' execution of his August 26, 2011 Parole Violation Sentence, he must file a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 after he exhausts his state court remedies. *See McGee v. Martinez*, 627 F.3d 933, 936 (3d Cir. 2010).

[3]Plaintiff cannot seek monetary damages from the named Defendants in both their individual and official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, both compensatory and punitive damages, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

Thus, insofar as Plaintiff is suing all of the state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities. Therefore, any claims of Plaintiff for monetary damages against Defendants in their official capacities should be dismissed with prejudice.

CP-67-CR-3077-2008.[4]

Thus, Plaintiff basically avers that he holds the key to his own release since it was ordered on August 26, 2011, that when he pays in full the outstanding costs and fines owed in his York County Court of Common Pleas criminal case, Docket No. CP-67-CR-3077-2008, his case will be closed. However, Plaintiff claims that Defendants are preventing him from earning his release and achieving the closure of his criminal case since they will not allow him to be transferred to the Dauphin County Work Release Center where he can work for his brother and earn the money necessary to pay in full his costs and fines. Plaintiff seeks this Court to order Defendants to abide by the York County Court's August 26, 2011 Parole Violation Order. Plaintiff does not appear to indicate in either his pleadings or his Exhibits that he filed any motion with the sentencing court, York County Court of Common Pleas, requesting that it direct Defendants to transfer him to the Dauphin County Work Release Center.

As mentioned, Plaintiff indicated that YCP has a grievance procedure available and that he filed grievances regarding his claim that he should be transferred to the Dauphin County Work Release Center. However, Plaintiff clearly indicates that the grievance process at YCP is not yet completed.[5] (Doc. 1, Doc. 6 and Doc. 9). In fact, Plaintiff admits that on November 23, 2011, he

---

[4]Plaintiff has no constitutional right to confinement in any particular prison, facility or rehabilitative program. *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Podhorn v. Grondolsky*, 2009 WL 3471299 (3d Cir.).

Also, the Anti-Injunction Act prohibits this Court from interfering with the State Court's determination or enforcing state court judgments as to where Plaintiff should serve his August 26, 2011 sentence. *See In re Madera*, 2008 WL 447497, * 5 (E.D. Pa. 2-7-08).

[5]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). In *Porter*

filed an appeal of the denial of one of his grievances with the Deputy Warden, Defendant Dull, and that it is still pending.  Plaintiff claims that Defendants are ignoring his grievances and delaying their responses to his grievances and appeals "in order to stall the process so that it exceeds [his] maximum [Sentence] date." (Doc. 9, p. 1).  Thus, Plaintiff readily admits on the face of his Complaints that he did not exhaust his available YCP administrative remedies with respect to his instant claims and his request for a transfer to the Dauphin County Work Release Center, but he contends that it would be futile to do so and that YCP officials are hindering his grievances to make him fully serve his maximum sentence date at YCP.

We find that Plaintiff's Complaints do not comport with Fed.R.Civ.P. 8.  We find that Plaintiff's Complaints do not sufficiently specify any conduct, wrongful or otherwise, of the numerous named Defendants, and it does not sufficiently mention the personal involvement of Defendants with any cognizable constitutional claim.  As stated, Plaintiff also admits on the face of his Complaints (Doc. 1 and Doc. 6) that he did not fully exhaust his available YCP administrative remedies with respect to his claims.  We now screen Plaintiff's Complaints as we are obliged to do.[6]

---

*v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

[6]This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

### III.  PLRA.

As stated, the Plaintiff has filed two applications to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915.  (Docs. 2 and 11).  The Prison Litigation Reform Act of 1995,[7] (the "PLRA"),

obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma*

*pauperis* pursuant to 28 U.S.C. § 1915.[8]  Specifically, Section 1915(e)(2), which was created by

§ 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

### IV.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009

WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights.  Rather, it

---

[7]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[8]The Plaintiff filed applications to proceed *in forma pauperis* with and an authorization to
have funds deducted from his prison accounts. (Docs.  2, 11, 12 and 13).

is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[9] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 ("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing *Rode, supra*.

_____

[9] Plaintiff alleges in his pleading that all of the individual Defendants are employees of York County. This is sufficient to show that Defendants are state agents.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.);  *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

## V.  Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
> *Fowler,* 578 F.3d at 210-11.

9

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

**VI.  Discussion.**

As noted, we recommend that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.  *See Meekins, supra.*

Plaintiff essentially claims that he is being improperly confined in York County Prison on his August 26, 2011 Parole Violation Order and sentence of 260 days, and that Defendants refuse to transfer him in, contravention of the York County Court's Order, which specifically ordered that he was to serve his sentence in partial confinement at the Dauphin County Work Release Center.

Plaintiff must file a petition for writ of habeas corpus under 28 U.S.C. §2254 insofar as he contends that his present confinement in YCP is unlawful.  *See Defoy v. McCullough*, 393 F.3d 439, 441-442 (3d Cir. 2005); *McGee, supra*.  Plaintiff can raise constitutional claims challenging the conditions of his confinement in a § 1983 civil rights action after he completes exhaustion of the claims *via* the prison's administrative remedy process.  The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the constitution, but is not challenging the fact or length of his custody.  *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973).  *See Boykin v. Siena House Gaudenzia Program*, 464 F.Supp.2d 416,  424 (M.D. Pa. 2006)("it is well-settled that prisoners cannot use §1983 to challenge the fact or duration of their confinement or to

seek immediate or speedier release.")(citing *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973)).

Plaintiff, insofar as he is attacking his 260-day Parole Violation Sentence of August 26, 2011 as unlawful, and insofar as he is implicating relief that may alter the term of his confinement in YCP, must file a §2254 habeas petition after he exhaust his state court remedies. *See Muhammad v. Close*, 124 S. Ct. 1303, 1304 (2004 (Per Curiam); *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002); *McGee, supra*.  In *Ryan v. U.S.*, 2011 WL 681090, *1-*2 (3d Cir. 2-28-11), the Third Circuit Court that an action lies in habeas if granting the petition "would 'necessarily imply' a change to the fact, duration, or execution of the Petitioner's sentence." (citing *McGee, supra*).

The execution of a sentence includes the criteria regarding the inmate's placement in community confinement. *Id.* (citation omitted).  In the instant case, the relief Plaintiff Shover requests, in part, necessarily affects the execution of his August 26, 2011 sentence by asking this Court to issue an injunction to order Defendants to release him from YCP and to terminate his parole (Doc. 1, p. 5), and by asking this Court to direct Defendants to transfer him to the Dauphin County Work Release Center as ordered by the York County Court.[10]  (Doc. 6, p. 3). Insofar as Plaintiff's action amounts to a habeas petition, he must exhaust his available administrative grievance processes as well as his state court remedies. *Id.* (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d cir. 1996)).  Further, as discussed below, to the

---

[10]As noted above, we find Plaintiff's request for injunctive relief is barred by the Anti-Injunction Act. *See In re Madera, supra*.

extent Plaintiff Shover's action does not lie in habeas, we find that the Court should dismiss his case since he failed to fully exhaust his administrative remedies at YCP.

Also, as mentioned, we find that Plaintiff fails to sufficiently allege the personal involvement of any Defendant with respect to his constitutional claims.  As stated, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)*,* repeated the personal involvement necessary in a § 1983 action.  In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have

> personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See Rhines v. Bledsoe*, 2010 WL 2911628, *2 (3d Cir.).

We do not find that Plaintiff has specifically stated the personal involvement of Defendant Warden Sabol and Defendant Chief Probation and Parole Officer Sabol with respect to any of his constitutional claims.   Thus, these Defendants are subject to dismissal without prejudice.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior)* (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10);  *Sims v. Piazza*, 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the assumption of truth.")(citation omitted).

Moreover, we do not find that Plaintiff's allegations that he sent numerous complaints and request slips to Defendant Hall regarding his August 26, 2011 Parole Violation Order and Sentence, and that Hall refused to cooperate with Plaintiff, state a cognizable constitutional claim. (Doc. 6, p. 2). Plaintiff is complaining about the manner in which Defendant Hall responded to his complaints. Plaintiff also alleges that Defendant Hall conspired with the other Defendants to violate his civil rights since he described the conditions of his August 26, 2011 Order multiple times. (*Id*.). We do not find that Plaintiff has stated a cognizable §1983 conspiracy claim against any Defendant.

We find that Plaintiff's bare conclusory allegations of a § 1983 conspiracy against Defendants are inadequate to state a cognizable conspiracy claim. *See Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993). "The Plaintiff's allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy' ... will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Id*. at 928.

As the Court stated in *Dennison v. Pa. Dept. of Corrections*, 268 F. Supp. 2d 387, 401 (M.D. Pa. 2003):

> To sustain a conspiracy claim under section 1983, [Plaintiff] must
> establish that: (1) defendants deprived him of a right secured by the
> Constitution or laws of the United States and (2) conspired to do so while
> acting under color of state law. *Adickes v S. H. Kress & Co.*, 398 U.S. 144,

150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Marchese v. Umstead,* 110 F.Supp.2d 361, 371 (E.D. Pa. 2000). Additionally, "'to [s]ufficiently allege a conspiracy, a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Marchese*, 110 F.Supp.2d at 371 (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted). "'A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" *Id.* (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).

We find that Plaintiff does not specify any role or agreement of any Defendant in the alleged conspiracy to keep him confined at YCP despite the August 26, 2011 Order, and to delay responding to his grievances until he serves the maximum time under his sentence. Plaintiff fails to allege what any Defendant specifically conspired to do, or what specific actions any Defendant took in furtherance of the alleged conspiracy. Also, Plaintiff fails to aver any facts "showing an agreement or plan formulated and executed by Defendants to achieve a conspiracy." *Ireland v. McDaniel*, 2011 WL 860390, *13-*14("To Demonstrate a conspiracy under section 1983, 'a Plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'"(citations omitted).

Additionally, Plaintiff alleges that Defendant Dull has not answered his multiple requests, grievances and appeals he filed. (*Id.*). Plaintiff also avers that Defendant Dull has blocked the YCP medical department from sending his medical information to the Dauphin County Work Release Center so that he can be transferred there. (*Id.*).

15

Insofar as Plaintiff alleges Defendants Hall and Dull violated his constitutional rights with respect to their responses or failure to respond to his grievances and Appeals, we find that Plaintiff has failed to implicate a constitutional right.  Thus, Plaintiff is claiming Defendants Hall and Dull violated his constitutional rights regarding their handling of his grievances and requests.  We find that these Defendants should be dismissed with prejudice.

Simply because Defendants Hall and Dull allegedly did not properly investigate and respond to  Plaintiff's administrative remedy requests and his appeals is not sufficient to name these YCP officials as Defendants in this civil rights action.  *See White v. Bledsoe*, 2011 WL 2292279, * 6 (M.D. Pa. 6-8-11) ("Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement.") (citations omitted); *Lyons v. Beard*, 2009 WL 604139, *5("[The Plaintiff inmate's] dissatisfaction with responses to his grievances does not support a constitutional claim.").

The law is well-settled that inmates do not have a constitutional right to a grievance process, and that naming the supervisory Defendants based only on their responses to an inmate's grievance and appeals will subject these Defendants to dismissal.  *Bartelli v. Jones*, 231 Fed. Appx. 129, 132 (3d Cir. 2007)("a state grievance procedure does not confer any substantive constitutional right upon prison inmates.")(citation omitted); *O'Connell v. Sobina*, 2008 WL 144199, * 17 (W. D. Pa.);  *Jones v. North Carolina Prisoners's Labor Union, Inc.,* 433 U.S. 119, 137-38 (1977).  This  Court has also recognized that grievance procedures are not constitutionally mandated.  *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8,

2005)(Non-Precedential).  Even if the prison provides for a grievance procedure, as the YCP does, violations of those procedures do not amount to a civil rights cause of action.  *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005)(Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated.  *Burnside, supra.  See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.)(claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures." (citations omitted)).

Moreover, Plaintiff names York County as a Defendant in this case.  However, we do not find any municipal liability claim is stated against Defendant York County. To the extent Plaintiff has named York County as a Defendant, he is asserting a claim pursuant to *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978).  We find that Plaintiff fails to state a cognizable municipal liability claim against York County.  *See Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).  Under *Monell*, "municipalities and other local government units are among those 'persons' to whom Section 1983 applies."  *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9.  *See Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.).  As the *Malles* Court stated:

17

> According to the teaching of *Monell v. Department of Social Services,*
> 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County
> "can be sued directly under § 1983 ... [when] the action that is alleged
> to be unconstitutional implements or executes a policy statement,
> ordinance, regulation, or decision officially adopted and promulgated
> by [Lehigh County's] officers" or where the constitutional deprivations
> occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98
> S. Ct. 2018.

*Id*.

Based on our above discussion of Plaintiff's allegations, we find that Plaintiff has not

stated a cognizable municipal liability claim under *Monell* against York  County with respect

to any of his stated constitutional claims.  Plaintiff does not aver that York County had a  policy

to confine criminal Defendants in its prison contrary to Court orders.  Plaintiff only avers that

Defendants have refused to transfer him to the Dauphin County Work Release Center as the

York County Court ordered.  York County cannot be held liable for the conduct of persons it

supervises  pursuant to *respondeat superior.  Meyers v. Schuylkill Co. Prison*, 2006 WL 559467,

*9.  Also, "[York County] is subject to liability to the extent [it] maintain[s] an unconstitutional

custom or policy that caused the alleged constitutional violation."  *Id.* (citation omitted).  No

such custom or policy is properly alleged by Plaintiff with respect to York County.

As the *Kokinda* Court stated:

> A municipality cannot be held liable for the actions of its
> employees under § 1983 based upon *respondeat superior*.
> *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct.
> 2018, 56 L.Ed.2d 611 (1978).  However, "the government as an
> entity is responsible under § 1983" when it "caused" the Plaintiff's
> injury; that is, "when execution of a government's policy or custom,
> whether made by its lawmakers or by those whose edicts or acts
> may fairly be said to represent official policy, inflicts the injury."
> *Id.* at 694, 98 S.Ct. 2018.  Where, as here, Plaintiff alleges that
> the flawed policy is a failure to train, the municipality can be held

liable when "'that failure amounts to "deliberate indifference . . . [to the constitutional rights of persons with whom the police come in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate 'constitutional'' injury." *Id*.  at 325 (citations omitted).

To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation."  *Grayson v. May view State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.ct. 1382, 137 L.Ed.2d 626 (1997)). But, despite Defendants' arguments that Plaintiff has failed to allege any specific policies that authorized the actions officers Brenner and Ohl allegedly took, (Doc. 9, at 10; Doc. 11, at 6-8), there is no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss.  *Carter v. City of Philadelphia*, 181 F.3d 339, 358 (3d Cir. 1999).  This would be "unduly harsh" at this early juncture. *Id*.

*Kokinda*, 557 F. Supp. 2d at 590-91.

Plaintiff does not make any allegations as described above against York County necessary to make it subject to municipality liable in a § 1983 action.  We find that Plaintiff has not sufficiently stated a claim under *Monell* against York  County  with respect to any of his constitutional claims.  Based on *Kokinda, Meyers*, and *Malles*, we find Plaintiff's allegations do not sufficiently state that York County  caused any Defendant's alleged conduct by having customs, policies, practices and procedures, and that this conduct gave rise to the constitutional violations alleged in the Complaint.   Therefore, we will recommend that Defendant York be dismissed.

As stated, in addition to his constitutional claims, Plaintiff raises civil RICO claims. Plaintiff simply states that Defendant Warden Sabol is married to Defendant Chief Probation

Officer Sabol and that this is a conflict of interest.  Plaintiff asserts civil RICO claims against the

Sabol Defendants and he alleges that they are trafficking persons, dealing in proceeds of

unlawful activities, unlawful restraint, and false imprisonment. (Doc. 1, pp. 4-5).  Plaintiff also

alleges that the Sabol Defendants are engaging in conduct in violation of 18 USC §1593A,

"benefitting financially from peonage. Slavery, and trafficking of persons" and this "creates a

pattern of racketeering activity and is subject to criminal and civil remedies pursuant to 18

Pa.C.S.A. §911 Corrupt Organization and 18 USC § 1964 Racketeering."  (*Id.*, p. 5).

To support his claims for RICO liability, Plaintiff must identify and allege racketeering

acts which Defendants committed.  The Court in *Freedom Medical Inc., v. Gillespie*, 634 F.

Supp. 2d 490, 506-07 (E.D. Pa. 2007), stated:

> In addition to properly alleging the existence of an enterprise, a RICO
> plaintiff must allege that each defendant conducted or participated in the
> conduct of the enterprise's affairs. *Reves v. Ernst & Young,* 507 U.S. 170, 185,
> 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Univ. of Md. at Balt. v. Peat, Marwick,
> Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993). In order to participate
> in the conduct of an enterprise's affairs, one need not hold a formal or
> managerial position within an enterprise.  RICO liability is not limited to
> upper management but extends to "lower-rung participants in the enterprise
> who are under the direction of upper management," as long as they
> "further the illegal aims of the enterprise by carrying out the directives of
> those in control." *United States v. Urban,* 404 F.3d 754, 769-70
> (3d Cir.2005) (quoting *Reves* at 184, 113 S.Ct. 1163). The necessary
> requirement is that there be a "nexus between the person and the conduct
> in the affairs of an enterprise." *Univ. of Md.* at 1539 (holding that allegations
> that a defendant provided valuable, indispensable accounting services
> to the enterprise did not adequately plead participation in the conduct
> of the enterprise).

Title 18 U.S.C. § 1961(1) provides a list of criminal acts which constitute "racketeering

activity" under the statute.  This list is exhaustive.  *See Annulli v. Panikkar*, 200 F.3d 189, 200

(3d. Cir. 1999) (holding that intentional interference with a contract under state law did not constitute racketeering under 18 U.S.C. § 1961(1) when plaintiff's contract with defendant to manage tree garden was terminated).  To allege the criminal acts that constitute racketeering activity, a plaintiff must sufficiently allege the required elements of each criminal act.  Thus, to satisfy a RICO claim, "a plaintiff must establish all elements of the predicate act crimes in addition to the elements enumerated in RICO."  *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785 (M.D. Pa.).  Plaintiff Shover fails to properly allege that Defendants committed any criminal acts enumerated under RICO.  Based on our discussion above, we find that Plaintiff's Complaint fails to contain sufficient allegations to show the required nexus between each Defendant and the conduct of the enterprise.  *Freedom Medical Inc., v. Gillespie*, 634 F. Supp. 2d at 507.

Moreover, the Court in *Freedom Medical Inc., v. Gillespie*, 634 F. Supp. 2d at 509, stated:

> In addition to properly alleging the existence of two or more predicate acts, a plaintiff must also show that the racketeering acts are related and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239-40, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *c.f. Marshall-Silver Constr. Co. v. Mendel,* 894 F.2d 593 (3d Cir.1990) (affirming dismissal of complaint for failure to adequately allege relatedness and continuity); *overruled in non-pertinent part, Tabas v. Tabas,* 47 F.3d 1280, 1293 n. 17 (3d Cir.1995). Predicate acts are considered related if they have "the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events." *H.J.* at 240, 109 S.Ct. 2893. Predicate acts will satisfy the continuity requirement where they evince "long-term criminal conduct" or where "it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Tabas* at 1293.

Additionally, as the Court in *Freedom Medical Inc., v. Gillespie*, 634 F. Supp. 2d at 509, stated:

> To properly state a RICO claim under 18 U.S.C. § 1962(c), the plaintiff must not only properly allege an enterprise in which the defendant participated, and a "pattern of racketeering activity." The plaintiff must also plead a "nexus" between the two: "all predicate acts in a pattern must somehow be related to the enterprise." *Banks v. Wolk*, 918 F.2d 418, 424 (3d Cir.1990). This requirement is satisfied when " '[o]ne is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affirm of the enterprise; or the predicate offences are related to the activities of that enterprise.' " *Id.* (citing *United States v. Provenzano*, 688 F.2d 194, 200 (3d Cir.1982)); *see also United States v. Irizarry*, 341 F.3d 273, 304 (3d Cir.2003).

Even assuming, *arguendo*, that Plaintiff has properly pled an enterprise and that he has pled the Sabol Defendants were participants in this enterprise, we do not find that he has properly alleged a pattern of racketeering regarding these Defendants.  Also, we find that Plaintiff has failed to allege particular facts that the Sabol Defendants knew that they were participating in a scheme to traffic people for unlawful confinement in YCP for financial gain.

As discussed above, we find that Plaintiff fails to sufficiently allege the required elements of any predicate offense.  As such, we find that Plaintiff fails to sufficiently allege his RICO claims and, we will recommend that these claims be dismissed.

We find that Plaintiff is essentially raising a claim under the Equal Protection Clause against Defendants.  *See Goldhaber v. Higgins*, 576 F.Supp. 2d 694, 723 (W.D. Pa. 2007). Plaintiff is basically claiming that Defendants arbitrarily and irrationally discriminated against him for the specific purpose of circumventing the York County Court's August 26, 2011 Order and preventing him from participating in the Dauphin County Work Release Center. "No State

has a legitimate interest in imposing arbitrary and unique harm upon a particular individual or group or individuals." *Id*. (citing *Romer v. Evans*, 517 U.S. 620, 633, 116 S.Ct. 1620, 1627 (1996)). Thus, "[t]o the extent that [Plaintiff] alleges that the Defendants conspired to inflict arbitrary, capricious and irrational harm upon him which was not inflicted upon any other inmates), he alleges violations of the Equal Protection Clause." *Id*. The Court in *Goldhaber v. Higgins*, 576 F.Supp. 2d at 723, n. 5, noted that the "Supreme court has recognized that prisoners may invoke th protections of the Equal Protection Clause even where they do not allege a deprivation of a constitutionally protected liberty or property interest." *Id*. (citing *Sandin v. Conner*, 515 U.S. 472, 487, 115 S.Ct. 2293, 2302 (1995)).

However, based on the above, we do not find that Plaintiff has stated a cognizable equal protection claim against Defendants.

Moreover, we do not find that Plaintiff Shover has stated a viable Fourteenth Amendment due process claim, either substantive or procedural due process claim. "In order to proceed with his claims under the Due Process Clause, [Plaintiff] must allege, at a minimum, that the actions of the Defendants constituted a deprivation of his liberty or property interests." *Id*. at 724 (citation omitted). Plaintiff is an incarcerated prisoner and as such, he had no liberty or property interest in obtaining work release. *Id*. Thus, Plaintiff does not state a substantive due process claim. Additionally, Plaintiff does not state a procedural due process claim since he has not alleged that Defendants imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life and since he "had no constitutionally protected liberty interest in being confined to a facility of his choosing." *Id.* at 725(citing *Sandin, supra*).

As noted above, Plaintiff Shover had no constitutional protected liberty interest in being placed in the Dauphin County Work Release Center. *Id.*; *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532 (1976)(The Constitution does not "guarantee that the convicted prisoner will be placed in any particular prison").

Therefore, we find that Plaintiff has stated a claim under the Equal Protection Clause, and not under the Due Process Clause.  We find that Plaintiff has failed to properly state an equal protection claim.  Also, we find that Plaintiff has not exhausted his YCP administrative remedies with respect to this Equal Protection Clause claim or any other claims.

Significantly, as mentioned, we find that Plaintiff admits on the face of his Complaints (Doc. 1 and Doc. 6), as well as in his Memorandum (Doc. 9), that he has filed grievances and appeals but that he has not yet fully exhausted his available administrative remedies at YCP regarding his claims.  We will recommend that Plaintiff's action be dismissed without prejudice to file a new action after he exhausts his YCP administrative remedies.  *See Boykin v. Siena House Gaudenzia Program*, 464 F.Supp.2d 416, 420-421 (M.D. Pa. 2006).

As mentioned, it is quite apparent from the face of Plaintiff's Complaints that he has not yet fully exhausted all of his YCP administrative remedies before he filed this action, as required.  (Doc. 1 and Doc. 6).  We find that in screening Plaintiff's Complaints under the PLRA, the Court can *sua sponte* dismiss Plaintiff's action since his pleadings are clear that he did not exhaust his administrative remedies regarding his claims before he filed his action.  *See Robinson v. Varano*, Civil No. 10-2131, M.D. Pa. (January 25, 2011 Order); *Jones v. Lorady*, Civil No. 11-0666, M.D. Pa. (June 17, 2011 Order).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit

recently stated:

> Failure to exhaust and the statute of limitations are similar "in the abstract": they are
> both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state
> a claim when the limitations defense is obvious from the face of the complaint. We see
> no reason why a district court, when screening a complaint pursuant to the PLRA, may
> not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely.
> Indeed, other Courts of Appeals have recognized that dismissal under these
> circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th
> Cir.2006); *Delis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *NASI v.
> Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v.
> Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations
> defense is apparent from the face of the complaint, a court may sua sponte dismiss the
> complaint pursuant to 28 U.S.C.
> § 1915 or 28 U.S.C. § 1915A.

(Emphasis added).

Thus, based on *McPherson, Lorady and Robinson*, even though exhaustion is an affirmative

defense pursuant to *Ray*, *sua sponte* dismissal of Plaintiff Shover's  action by this Court is nonetheless

proper since his failure to fully exhaust his YCP administrative remedies available to him is abundantly

clear from the face of his Complaints.[11]

Initially, the issue of whether Plaintiff fully exhausted all of his YCP administrative remedies

which were available to him is a question of law for the Court to decide.  *See Dripped v. Tobelinski*,

604 F. 3d 778, 782 (3d Cir. 2010)("exhaustion of administrative remedies under the PLRA is a

question of law to be determined by the judge")(citation omitted).

---

[11] Thus, an inmate must complete all parts of the grievance process to establish that he
has exhausted his administrative remedies. *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir.
10-19-07)(Non-Precedential) (citation omitted).  Failure to complete any component of the
administrative process will preclude an inmate's claim in federal court.  *Id.*

In *Womack v. Smith*, 310 Fed. Appx. 547, 550 (3d Cir. 2009), the Court stated:

> The Prison Litigation Reform Act (PLRA), requires full and procedurally proper exhaustion of all available administrative remedies as a prerequisite to prisoner suits challenging prison conditions under federal law. 42 U.S.C. § 1997e(a); *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Spruill v. Gillis,* 372 F.3d 218 (3d Cir.2004). "[P]rison grievance procedures supply the yardstick for measuring procedural default." *Spruill,* 372 F.3d at 231.

Section 1997(a) of the Prison Litigation Reform Act ("PLRA") provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such administrative remedies as are available are exhausted.  42 U.S.C. § 1997e(a).

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

The Third Circuit has stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies **prior to filing suit in federal court**." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted)(emphasis added).  The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded.  *Id.  See also Nyhuis v. Reno,* 204 F. 3d 65 (3d Cir. 2000).

As the Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion
> of administrative remedies is required for all actions concerning
> prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a);
> *see Woodford v Ngo*, 126 S.Ct. 2378 (2006). The "exhaustion
> requirement applies to all inmate suits about prison life, whether
> they involve general circumstances or particular episodes, and
> whether they allege excessive force or some other wrong." *Porter v.
> Nussle*, 534 U.S. 516 (2002). "The PLRA attempts to eliminate
> unwarranted federal-court interference with the administration of
> prisons, and thus seeks to afford corrections officials time and opportunity
> to address complaints internally before allowing the initiation of a
> federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and
> citation omitted). "The benefits of exhaustion can be realized only if the
> prison grievance system is given a fair opportunity to consider the
> grievance." *Id*. at 2388.
>
> The PLRA mandates that inmates "properly" exhaust administrative
> remedies before filing suit in federal court. *Id*. at 2387. "Proper
> exhaustion demands compliance with an agency's deadlines and
> other critical procedural rules because no adjudicative system can
> function effectively without imposing some orderly structure on the
> course of its proceedings." *Id*. at 2386. Failure to substantially comply
> with the procedural requirements of the applicable prison's grievance
> system will result in a procedural default of the claim. *Spruill v. Gillis*,
> 372 F.3d 218, 227-32 (3d Cir. 2004). The PLRA "completely precludes
> a futility exception to its mandatory exhaustion requirement." *Nyhuis v.
> Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The present Complaints are clear that Plaintiff Shover has not yet completed exhaustion of

his stated constitutional claims against Defendants.

The law is clear that Plaintiff Shover was required to exhaust his administrative remedies

before he filed his instant action. *See Walker v. Health Services, Lewisburg Penitentiary*, 2007 WL

1395361, *3 (M.D. Pa.). The law is also clear that Plaintiff cannot complete exhaustion while his

present action is pending with this Court. Rather, Plaintiff's instant case must be dismissed without

prejudice and he can file a new action once he completes exhaustion.  The Third Circuit stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 Fed.Appx. 991, 993 (3d Cir. 2006) (not precedential). The *Oriakhi* Court found that the lower court had properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim.  "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Oriakhi*, 165 Fed. Appx. at 993 (quoting *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003)).

Accordingly, we will recommend that Plaintiff Shover's Complaints (Doc. 1 and Doc. 6) be dismissed without prejudice to file a new action after he completes exhaustion of his YCP administrative remedies.

## VII.  Recommendation.

Based on the above, it is respectfully recommended that Plaintiff Shover's Complaints **(Docs. 1 and 6)** be dismissed without prejudice to file a new action after he completes exhaustion of his YCP administrative remedies, and that this case be closed.  It is recommended that Plaintiff's

Motions for Appointment of Counsel **(Docs. 3 and 10)** be denied as moot.  It is recommended that

Plaintiff's *in forma pauperis* motions **(Docs. 2 and 11)** be granted solely for the purpose of filing this

action.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:  January 25, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD PAUL SHOVER II, | : | CIVIL ACTION NO. **3:CV-11-2248** |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| YORK COUNTY, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January25, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

30

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                                  **s/ Thomas M. Blewitt**
_____   **THOMAS M. BLEWITT**
                                  **United States Magistrate Judge**


**Dated: January 25, 2012**